Argued and submitted January 3; resubmitted en banc April 11, 2001, affirmed
June 27, 2001

## In the Matter of the Compensation of
## Joseph H. Keller, Claimant.

### Joseph H. KELLER,
*Petitioner,*

*v.*

### SAIF Corporation
### and Alan Bowdish, Inc.,
*Respondents.*

### 98-09663; A109170

27 P3d 1064

Lauren Paulson argued the cause and filed the brief for petitioner.

Jerome P. Larkin argued the cause and filed the brief for respondents.

Before Deits, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Kistler, Brewer, Judges, and Lipscomb, Judge pro tempore.

WOLLHEIM, J.

Lipscomb, J. pro tempore, dissenting.

## WOLLHEIM, J.

Claimant seeks review of an order of the Workers' Compensation Board, asserting that the Board erred in concluding that his claim for a work-related injury was barred as untimely. We conclude that the Board did not err and therefore affirm.

The facts are undisputed. Claimant twisted his ankle at work on October 23, 1997. He did not notify employer or seek medical attention because he thought that the injury was minor and would heal on its own. Employer was aware that claimant had injured his foot but did not know that the injury had occurred at work. Claimant continued to experience pain, however, and in December 1997 he sought medical attention. On October 20, 1998, claimant filed a claim and thereby notified employer that the injury was work-related. Employer denied the claim as untimely. An administrative law judge (ALJ) and the Board upheld the denial, and claimant seeks review.

The case turns on an interpretation of ORS 656.265. As relevant, that statute provides:

"(1)   Notice of an accident resulting in an injury or death shall be given immediately by the worker or a dependent of the worker to the employer, but not later than 90 days after the accident. * * *

"* * * * *

"(4)   Failure to give notice as required by this section bars a claim under this chapter unless *the notice is given* within one year after the date of the accident and:

"(a)   The *employer had knowledge* of the injury or death[.]" (Emphasis added.)

Although claimant acknowledges that he did not file his claim within 90 days, he asserts that his claim is not barred because it satisfies the exception stated in ORS 656.265(4)(a).

■        Claimant's argument raises two distinct issues under the statute. The first issue that we address is the time within which the employer must have had knowledge of the

injury. In claimant's view, the knowledge requirement is satisfied if the employer learns of the injury any time within one year after the date of the accident. Thus, in claimant's view, the delayed notice, filed within one year of the date of the accident, can give knowledge of the injury. In employer's view, the employer must have knowledge of the injury within the 90-day period for filing notice of the claim. We agree with employer. In the first place, this court has implicitly held, in *McNett v. Roy-Ladd Const. Co.*, 46 Or App 601, 613 P2d 47, *rev den* 289 Or 588 (1980) (knowledge exception inapplicable because knowledge acquired after 180-day deadline for giving notice of claim did not prejudice employer), that knowledge gained after the initial notice period does not satisfy the exception.

Secondly, an analysis of the statute under the template of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), confirms our interpretation. Contrary to the view expressed by the dissent, the statutory language is not unclear as to when the employer must gain knowledge of the injury. Although ORS 656.265(4)(a) does not explicitly state a time period within which the employer must have acquired knowledge of the injury, the conclusion that knowledge of the injury must be gained within the 90-day period for filing a claim is the only plausible reading of the statute. The text of ORS 656.265(4)(a) requires that the employer *"had* knowledge" of the injury, implicitly requiring that the knowledge came *before* the delayed notice permitted by ORS 656.265(4). Further, the context of subparagraph (4)(a), in its logical flow from subsection (1), requires the conclusion that the employer's knowledge must have been gained within the 90-day period set forth in subsection (1). Subsection (1) provides that notice of an accident resulting in injury "shall be given immediately * * * but not later than 90 days after the accident." Subsection (4) provides that a claim is *barred* if the required notice is not given, unless one of the exceptions is applicable. The exception described in subparagraph (4)(a) requires that notice be given within one year of the accident and that "the employer had knowledge of the injury or death." Although no specific time period for the acquisition of knowledge is set forth in subparagraph (4)(a), the logical sequence of the language suggests that the knowledge of the

injury must be gained by the employer during the initial notice period set out in subsection (1) and to which the exception applies. Thus, a claimant is excused from giving formal notice within 90 days, so long as the employer had actual knowledge of the injury during that same 90-day time period and the claimant gave formal notice within one year.[1]

■       Finally, claimant's reading of the exception stated in ORS 656.265(4)(a) would, essentially, swallow up the rule stated in ORS 656.265(1) and (4). If, as claimant asserts, a claim is not barred and is permitted to go forward when, within one year of the injury, a notice of claim is filed and the employer acquires knowledge of the injury, then there would be no need for subsection (1) or for the first clause of the first sentence of subsection (4) ("Failure to give notice as required by this section bars a claim under this chapter[.]"). We will not construe a statute in a way that renders its provisions superfluous. ORS 174.010. In giving effect both to the 90-day requirement of subsection (1) and to the exception set forth in subparagraph (4)(a), we conclude that the statute must be read to require that the employer have knowledge of the injury within 90 days of the accident.[2]

■       The second issue that claimant's petition raises is the extent of the knowledge required by ORS 656.265(4)(a). In claimant's view, it is sufficient that employer knew, within 90 days after the accident, that claimant had injured his foot, although it was unaware of the possibility that the injury was work-related. We reject the contention. In *Argonaut Ins. Co. v. Mock (A41801)*, 95 Or App 1, 768 P2d 401, *rev den* 308 Or 79 (1989), this court said that the employer's "knowledge of the injury" under ORS 656.265(4)(a)

> "must be sufficient reasonably to meet the purposes of prompt notice of an industrial accident or injury. If an employer is aware that a worker has an injury without having any knowledge of how it occurred in relation to the

---

[1] As the dissent points out, subparagraph (4)(b) provides an additional exception if the worker dies within 180 days after the date of the accident and notice is given within one year of the date of the accident. We do not venture to speculate why the legislature considered 180 days to be appropriate in that context.

[2] To the extent that *dictum* in our opinion in *Allied Systems Co. v. Nelson*, 158 Or App 639, 646, 975 P2d 923 (1999), suggests that the knowledge may be gained within one year of the injury, that language is disapproved.

employment, there is no reason for the employer to investigate or to meet its responsibilities under the Workers' Compensation Act. Actual knowledge by the employer need not include detailed elements of the occurrence necessary to determine coverage under the act. However, knowledge of the injury should include enough facts as to lead a reasonable employer to conclude that workers' compensation liability is a possibility and that further investigation is appropriate." 95 Or App at 5.

Thus, this court has previously required that the employer have knowledge of not merely an injury but also of the injury's possible relationship to the employment. *See also Wilson v. Roseburg Forest Products*, 113 Or App 670, 673-74, 833 P2d 1362 (1992). Here, it is conceded that employer had no knowledge of the injury's potential work connection until the date when claimant filed his claim, almost one year after the injury.

The dissent points out that ORS 656.265(4)(a) has been amended since we decided *Mock*. However, the changes did not alter the language that we considered in *Mock* or that is under consideration here, and we are not persuaded that the changes have any bearing on the issue of what type of knowledge the employer must have. Then, as now, the employer must have had "knowledge of the injury."

Further, we disagree with the dissent's assertion that our pre-*PGE* analysis in *Mock* must be reevaluated. It remains precedential in the aftermath of that decision. *See Kambury v. DaimlerChrysler Corporation*, 173 Or App 372, 379, 21 P3d 1089 (2001). Even if we were to reevaluate *Mock*, however, it withstands scrutiny. As the dissent notes, subsection (1) of ORS 656.265 provides that "[n]otice of *an accident resulting in an injury or death*" shall be given immediately, but not later than 90 days after the accident. Subsection (4) lists two exceptions to the 90-day limitation, including the one alleged to be applicable here, that "[t]he employer had knowledge of *the* injury or death." (Emphasis added.) It is apparent that the legislature intended the two subsections to work together. Subsection (1) describes the time limitation for giving notice of "*an accident resulting in injury*," and subparagraph (4)(a) provides for an exception to that requirement when the employer receives notice within one year and

had "knowledge of *the* injury." "Knowledge of *the* injury" as used in subsection (4) can only mean knowledge of the injury referred to in subsection (1) as the alleged result of an accident, and necessarily includes knowledge of the *alleged* work relationship.[3] *See Osborn v. PSRB*, 325 Or 135, 142, 934 P2d 391 (1997) (analyzing use of different modifiers in different statute). The dissent mistakenly reads "the injury" as used in subsection (4) in isolation from and without regard to its original reference in subsection (1) and thereby would reach the unintended result that the statute is satisfied if the employer has knowledge of an injury, even if the employer had no knowledge that the injury was possibly work-related.

In summary, the Board correctly upheld employer's denial of the claim on the ground that it is untimely.

Affirmed.

**LIPSCOMB, J.,** pro tempore, dissenting.

The majority reaches the wrong result in this case because it applies the wrong analysis. In holding that the result in this case is unaffected by the 1995 statutory amendments to ORS 656.265, the majority principally relies on a preamendment case interpreting that statute. *Argonaut Ins. Co. v. Mock*, 95 Or App 1, 768 P2d 401 (1989).[1] The majority's reliance on *Mock* cannot be justified for three reasons.

First, the reason offered by the majority for its reliance on *Mock* is that the 1995 amendments did not alter the specific language under consideration in this case. Thus, in its interpretation of the statutory phrase, "the employer had knowledge of the injury or death," the majority isolates that phrase from its statutory context. Doing so enables the

---

[3] Contrary to the dissent's suggestion, we do not hold that the employer must have knowledge of the *compensability* of the claim, only of the alleged work relationship.

[1] The majority also makes brief reference to an earlier case, *McNett v. Roy-Ladd Const. Co.*, 46 Or App 601, 613 P2d 47 (1980), as one which "implicitly" supports its reading of this statute. The reference is inapposite. In *McNett*, the employer had no knowledge of the impairment at all prior to filing of the tardy claim. Nevertheless, the claim was still found compensable because the employer failed to prove prejudice from the tardy claim filing under the then applicable version of the statute. There is, accordingly, simply nothing in *McNett* that supports the majority interpretation here, "implicitly" or otherwise.

majority to ignore the 1995 statutory amendments to ORS 656.265 which changed that context. However, as the Supreme Court held in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), a reviewing court must consider *both* the text *and* context at the initial level of statutory construction. As noted below, a more faithful application of the *PGE* methodology leads to a different interpretation of the statutory language in its appropriate context.

Second, the majority's reference to this court's recent decision in *Kambury v. DaimlerChrysler Corp.*, 173 Or App 372, 21 P3d 1089 (2001), in support of the proposition that this court's pre-*PGE* analysis of ORS 656.265 "remains precedential in the aftermath of that decision" is unpersuasive in this case. At most, *Kambury* stands for the proposition that this court's pre-*PGE* decisions should stand unless they are "plainly wrong" under the principles announced in *PGE*. *Kambury*, 173 Or App at 379.[2]

In this case, however, the statute in question has been amended significantly. Thus, the issue here is not whether *Mock*'s construction of the old statute would be "plainly wrong" under the principles announced in *PGE*, but rather whether the *Mock* decision retains continued validity under the amended statute when that new statute is interpreted pursuant to the methodology of *PGE*. See, e.g., *State v. Vasquez-Rubio*, 134 Or App 646, 653, 897 P2d 324 (1995), aff'd 323 Or 275, 917 P2d 494 (1996) (reexamining the continued validity of Court of Appeals precedent in light of subsequent statutory changes). And where, as here, the earlier decision relied upon the then existing statutory context in formulating that court's interpretation of the phrase in question, a major change to that statutory context certainly should not be ignored by a later court in reviewing the application of the amended statute in a new case.[3]

---

[2] Certainly there is nothing in *Western Helicopter Services v. Rogerson Aircraft*, 311 Or 361, 811 P2d 627 (1991), the case relied upon by the *Kambury* court, that supports a different conclusion. *Western Helicopter* involved a certification request to the Supreme Court from the United States District Court. The Supreme Court's opinion in *Western Helicopter* simply points out that on questions of state law the federal district courts, like the state trial courts, should accept the decisions of this court as "controlling precedent."

[3] Plainly, the amendments to ORS 656.265 contained in Oregon Laws 1995, chapter 332, section 29, reset the overall legislative balance between the interests

Third, when properly analyzed within the context of the 1995 statutory amendments to ORS 656.265, it becomes apparent that *Mock* should have no continued validity as an authoritative interpretation of the statutory language in subsection (4)(a). While the issue in *Mock*, as here, was what degree of knowledge of an injury will excuse an otherwise untimely notice, plainly the result in *Mock* was a judicial response to a practical concern for timely notice of claims. As the *Mock* court stated:

> "The issue is what knowledge will excuse an otherwise untimely notice. In *Colvin v. Industrial Indemnity*, 301 Or 743, 747, 725 P2d 356 (1986), the court said:
>
> > " 'Timely notice "facilitates prompt investigation and diagnosis of the injury. It assures the opportunity to make an accurate record of the occurrence, and decreases the chance for confusion due to intervening or nonemployment-related causes." *Vandre v. Weyerhaeuser Co.*, 42 Or App 705, 709, 601 P2d 1265 (1979).'
>
> "It follows that the 'knowledge of injury' must be sufficient reasonably to meet the purposes of prompt notice of an industrial accident or injury." 95 Or App at 5.

At the time it was decided, *Mock* made practical sense. Before the 1995 amendments, ORS 656.265(4) provided no legislative time limits at all on submitting tardy claims. So long as either "the employer had knowledge of the injury or death, or the insurer or self-insured employer has not been prejudiced by failure to receive the notice * * *,"[4] claims that would otherwise be untimely under subsection (1) could still be submitted at any time thereafter.

Accordingly, at the time *Mock* was decided, a judicial concern for stale claims was a valid consideration. "Knowledge of the injury or death" was therefore construed in *Mock* as if it actually read "knowledge of enough facts as to lead a reasonable employer to conclude that workers' compensation

---

of the employers and their employees with respect to the filing of claims. The ordinary claim period provided for in subsection (1) was extended from 30 days to 90 days. At the same time, the previously unlimited time period for giving tardy, but still valid, notices under subsection (4) was cut off at one year.

[1] ORS 656.265(4) (1993).

liability is a possibility and that further investigation is appropriate." *Mock*, 95 Or App at 5.[5] That was quite a stretch of the actual legislative language, but it was justified by the *Mock* court as necessary to guard against stale claims. Moreover, the methodology of *PGE* had not yet been articulated as the standard test for statutory interpretation in this state.

In 1995, however, the legislature amended the statute to alleviate such "prompt notice" concerns. Added to subsection (4) was a specific statutory requirement that unless notice of the claim was given "within one year after the date of the accident" it was forever barred. Thus, the 1995 Legislature itself provided a specific one-year limit which answered the *Mock* court's concern for sufficiently prompt notice to avoid stale claims. Of course, once the justification for the ruling in *Mock* has disappeared, there is no longer any need for that rule to continue any longer, particularly in the current, post-*PGE* environment.

One other provision added to the statute by the 1995 amendments further shows that the majority opinion cannot withstand careful scrutiny. Subsection (4)'s savings clause for tardy notices now contains an additional new basis for excusing late notices of claims (provided, of course, that the notice is eventually filed within the newly added one year cut off period). Subsection (4)(b) provides that, if a "worker dies within 180 days after the date of the accident," a notice given with subsection (4)'s one-year grace period will not be barred.

The majority's construction of subsection (4) creates a singularly anomalous effect. Under that construction, a worker's claim, which becomes untimely under subsection (1), is not saved under subsection (4)(a) unless the employer had knowledge of the compensable nature of the injury within 90 days. (The claim would simply be barred despite subsection (4)'s new one-year grace period.) Nevertheless, that very same worker's claim suddenly comes back to life under subsection (4)(b) in the event that the injured worker happens to die of any cause within the next 90 days (180 days

---

[5] In *Mock*, the employer appears to have had notice of the automobile accident producing the injury almost immediately, so the only issue was "what" the employer knew about its employment connection, not "when" it knew it.

total). By the clear terms of subsection (4)(b), if that same worker's claim is thereafter filed within the one-year statutory grace period it must then be upheld.

There is no good reason for reading those two new subsections in isolation, thereby forcing such a bizarre result out of the 1995 amendments to ORS 656.265. The 1995 statutory amendments, and the entire statutory scheme, must be read in context as a whole and harmonized whenever possible to give effect to the overall legislative intent.

Under *PGE*, the "text and context" of the statute provides the only proper basis for determining legislative intent as to the appropriate meaning and application of the actual language of the law, unless the statute remains "ambiguous" after the text and context are consulted. 317 Or at 610-11. Neither the text of the statute nor its statutory "context" support the majority's reading or create significant ambiguity in this case.

The phrase in question, "the employer had knowledge of the injury," is not itself particularly ambiguous. The words "knowledge" and "injury" are words of common usage, and should be given their plain, natural and ordinary meaning unless the context otherwise requires. *PGE*, 317 Or at 611. Nor does the context create any significant degree of ambiguity.[6] *See Lipscomb v. State Board of Higher Ed.*, 305 Or 472, 485 n 13, 753 P2d 939 (1988) ("Even a numerical reference, by nature unambiguous when viewed in isolation, may prove erroneous and require interpretation in its legislative context.").

Two contextual "clues" are particularly telling. First, although the majority would equate "injury" in subsection (4)(a) with "compensable injury," the statutory context demonstrates that the legislature expressly distinguishes between those terms. ORS 656.005(7) defines "compensable injury" as an accidental injury "arising out of and in the course of employment." The legislature's avoidance of that term in subsection (4)(a) is suggestive: If the legislature had

---

[6] Ambiguity is sometimes assumed to be a dualistic, categorical, all-or-nothing concept. Usually, however, it is a matter of degree, a relative concept, often dependent on the particular circumstances under which the language was employed.

meant "compensable injury," it could easily have said so. It did not. Accordingly, proof of the employer's knowledge of the injury, without more, should be sufficient under this legislative scheme to support an injured worker's reliance on subsection (4)'s one-year claim period.

Second, as noted above, *see* 175 Or App at 87, subsection (4)(b) clearly allows claims to be processed without any prior knowledge of the injury, provided that the claimant dies within 180 days of the accident and so long as notice is thereafter provided within one year of the accident. Thus, at least in those circumstances, the statute explicitly compels the same result that the majority opinion deems untenable.

Finally, even assuming some degree of ambiguity remains after construing the statutory text in context, examination of the 1995 Legislative history does not support the majority's reading of the amended statute. Indeed, the opposite is true.

The 1995 amendments to this statute were contained in section 29 of Senate Bill 369, a major legislative overhaul of the workers' compensation system. None of the legislative history contains any in-depth discussion of section 29, and there is no specific discussion of the meaning of the "knowledge of injury" requirement set forth in subsection (4)(a). However, one of the bill's chief sponsors, Senator Gene Derfler, prepared the following written summary as an exhibit for the Senate Committee on Labor & Government Operations files, which generally describes the operation of section 29 as follows:

"**ORS 656.265 Extends time for initial claim filing and establishes ultimate time limit for filing new claim.** Amendments to this section deal with the time in which a claim must be filed. The time for claim filing is extended from the current 30 days to 90 days, with a further extension to one year if the employer had knowledge of the injury. The time limit is also extended to one year if the worker died within 180 days of the date of the accident. Existing statute states that the time to file a claim is unlimited if the employer had knowledge of the injury or if the insurer had begun payments on the claim. These latter provisions are deleted." Testimony, Senate Committee on

Labor & Government Operations, SB 369, January 30, 1995, Ex A (boldface in original).

Senator Derfler's summary was reiterated in the House Committee on Labor staff's bill summary as well. Moreover, the Workers' Compensation Division of the Department of Consumer and Business Services submitted a similar general summary of its own before the House Committee on Labor on section 29 of Senate Bill 369.

> "Changes the time for notice of an accident resulting in injury or death by a worker or dependent of an employer from 30 days to 90 days after the accident. Changes the provisions which bar claims for failure to notify employer unless the notice is given within one year after the accident and the employer had knowledge of the injury or death or the worker died within 180 days after the date of the accident. Deletes the requirement that the worker must establish at hearing that the worker had good cause not to file notice within 30 days. Provides that the worker[']s claim shall not be defeated by failure to use the proper form, so long as the claim is made in writing." Testimony, House Committee on Labor, SB 369, March 8, 1995, Ex A.

This is essentially all the legislative history bearing on this issue. Plainly, there is no justification to be found in this legislative history for continuing to read "knowledge of the injury" as if it were actually "knowledge of enough facts as to lead a reasonable employer to conclude that workers' compensation liability is a possibility and that further investigation is appropriate," *Mock*, 95 Or App at 5, despite the legislature's broad restructuring of the statutory notice provisions.[7] To the contrary, the legislative history simply underscores that the language used by the legislature should be given its normal meaning.

In short, the language of the 1995 amendment to ORS 656.265 should be held to mean no more and no less than it says.[8] In cases like this one where the worker proves

---

[7] "When I make a word do a lot of work like that," said Humpty Dumpty, "I always pay it extra." Lewis Carroll, *Through the looking Glass, in The Annotated Alice*, 270 (Forum ed 1971).

[8] *See* ORS 174.010, which provides:

"In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to

that the employer had actual knowledge of the injury, a formal claim filed within one year of the accident under subsection (4)'s savings clause should not be barred by subsection (1) of the statute. I submit that this analysis is consistent with the language actually employed by the legislature in ORS 656.265. It is also faithful to the methodology of *PGE*, as decreed by our Supreme Court. And I would respectfully suggest that the majority opinion in this case is not consistent with either.

I would reverse and remand with instructions to order employer to process the claim.

Haselton, J., joins in this dissent.

---

insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."